## Commonwealth v. Grittner

*Paul W. Reeder*, District Attorney, for Commonwealth.

*Robert C. Wise*, for defendant.

GREEVY, May 17, 1962.—Elmer E. Grittner was charged with a speeding violation before Justice of the Peace Steve S. Sorage. The sole question before us is whether the prosecution was instituted before "the nearest available magistrate."

Section 1201(a) of The Vehicle Code of April 29, 1959, P. L. 58, as amended, provides, inter alia (75 PS §1201(a)):

"Informations, charging violations . . . shall be brought before the nearest available magistrate within the . . . township in the county where the alleged violation occurred. . ., where there is no substantial difference between the respective distances from the place where the alleged violation occurred . . . to the offices of more than one magistrate, any such prosecution may be brought before any one of such magistrates . . ."

There are two justices of the peace, namely, Steve S. Sorage and Lloyd Harer, commissioned in Clinton Township where the alleged violation occurred.

The district attorney stated:

"The question is this, Mr. Harer was the nearest available magistrate. This information was brought before Mr. Sorage, a justice of the peace in the same township. The reason it was brought there, Mr. Harer is and has been, and was at this time, critical, was unable to hold a hearing. This was discovered by this officer when he went in, and for that reason he then took this information to Mr. Sorage."

Counsel for defendant contends that Justice of the Peace Harer was available on February 11, 1962, the date the alleged offense occurred and for 15 days thereafter. Official docket entries of Justice of the Peace Harer were offered in evidence showing that informations were lodged before him by members of the Pennsylvania State Police, of which the arresting officer is a member, on the following dates: March 18, 1962, for a violation occurring March 8, 1962, fine paid March 29, 1962; February 9, 1962, for a speeding violation on February 2, 1962, fine paid February 26, 1962; February 9, 1962, for a violation on February 6, 1962, case closed by payment February 21, 1962; February 1, 1962, for violation on December 8, 1961,

case closed February 19, 1962; January 20, 1962, for violation on January 16, 1962, case closed by Justice of the Peace Harer on February 12, 1962, the day following the alleged violation in this case.

The prosecutor, the arresting officer, a member of the Pennsylvania State Police, testified that he apprehended defendant February 11, 1962, in Clinton Township, Lycoming County; that there are two justices of the peace in Clinton Township, namely, Sorage and Harer; that Sorage's office is two-tenths of a mile farther than Harer's office from where defendant was stopped; that on the evening of February 11, 1962, following the arrest, he stopped at Harer's office; that Harer was there sitting in a lounging chair, dressed in a pair of trousers and shirt; that Harer's conversation was "thick of tongue"; that he asked Harer how he was feeling and Harer replied, "I am all right". There was an oxygen tank in the room and, in his opinion, Harer was not capable of holding the hearing, so he filed the information later that same evening before Justice of the Peace Sorage.

The officer admitted he did not ask Harer if he was physically and mentally able to conduct business or make out the paper, nor did he go back at any time within the next 15 days. Neither did he ask Harer's personal physician as to whether Harer was physically able to conduct a hearing. On cross examination, the officer testified that, on the day in question when he stopped at Harer's in order to make out the information, Harer complained to him about State Police taking cases elsewhere. He further testified on cross examination that, from the point where the speed clock was finished to the respective justice of the peace offices, Harer's office was two-tenths of a mile, plus 200 yards, closer than Sorage's office.

The only other Commonwealth witness appearing before us was another member of the Pennsylvania

State Police, who testified that he was prosecutor in a case before Justice of the Peace Harer on February 18, 1962; that defendant in the case was from outside Pennsylvania and was taken immediately before Harer; that Harer was not physically good but handled the case.

Defendant testified that he saw Harer within 10 days after the alleged violation, that Harer was conducting business on that day and described Mr. Harer's appearance.

The Supreme Court of Pennsylvania has repeatedly held that the provisions of the statute that provides that informations must be brought "before the nearest available magistrate . . . within the township . . . where the alleged violation occurred" are mandatory and jurisdiction depends upon their observance: Commonwealth v. Muth, 397 Pa. 106, 111.

The first issue is, was Justice of the Peace Harer "available"? "Available" means capable of being made use of, at one's disposal, within one's reach: Commonwealth v. Esayian, 182 Pa. Superior Ct. 146, 149.

If a justice of the peace disqualifies himself because of interest, or is not able or willing to exercise duties of his office, he is not available but there is no such testimony before us; in fact, the record shows that he stated he was feeling all right and even complained that cases were being taken to the other justice of the peace when, under the law, they were supposed to go to him.

The defense has shown that Harer was handling other cases for the Commonwealth at or about the same day in question, and the only evidence that he was unavailable for this case was presented by the arresting officer.

Under the evidence presented before us, it is our opinion that Justice of the Peace Harer was available on the date in question.

The second issue is, was Sorage or Harer the nearest magistrate? "The term 'nearest' means the usual and ordinary method of proceeding such as by road": Commonwealth v. Emory, 3 D. & C. 2d 656, 658.

Section 1201, supra, qualifies the requirement to the extent that where there is no substantial difference in the distance from the place of offense to the offices of two justices of the peace within the township, the information may be filed with either one. The question then is, is there a substantial difference in the distance between the respective offices of Harer and Sorage and the place where the alleged violation occurred? The arresting officer testified that the difference in distance between the two offices from the place of the offense was two-tenths of a mile plus two hundred yards, with Harer's office being the nearer, and further that this particular route to Sorage's office would not be the main route, the main route being farther removed.

In Commonwealth v. Burall, 146 Pa. Superior Ct. 525, it was held that a difference of one-half block was not substantial. In Commonwealth v. Stubenazy, 25 D. & C. 2d 439, it was held that a difference of 350 feet was not substantial. In Commonwealth v. Emory, 3 D. & C. 2d 656, it was held that, where an officer passes the office of an available justice of the peace in order to lodge the information before another justice of the peace, the latter justice lacks jurisdiction. In Commonwealth v. Alexander, 7 Cumberland 200, it was held that, where an officer passes, or passes near to, the office of one magistrate in going to the office of another before whom a charge is made, the charge is not laid before the nearest magistrate irrespective of the distance between the two offices.

The ordinary and usual road of travel from the place where the alleged violation occurred to Justice Sorage's office is to pass the office of Justice Harer. If the dirt road, which is not the main road, is taken, then the

distance to Justice Sorage's office from the place where the alleged violation occurred is 1,656 feet farther than the distance to Justice Harer's office, and we hold that this difference is substantial.

"These venue provisions were inserted for the purpose of preventing oppression. They were designed to prevent officers from harrassing motorists who violate the code by taking them to a magistrate at a distant point in the county, and also to prevent an improper alliance between the magistrate and the officer in the prosecution of violations": Commonwealth v. Muth, 397 Pa. 106, 112. We do not believe there was any improper or ulterior motive in this case in selecting Sorage, but likewise we do not believe that an arresting officer should, on the sole basis of his own observation, determine that a justice of the peace is physically unable to handle a case and, therefore, is unavailable. The record before us is that Justice of the Peace Harer was handling similar cases during the time in question and was available and that there is a substantial difference in distance between Harer's office and Sorage's office from the place of the alleged violation.

Section 1201(a) of The Vehicle Code, supra, is a jurisdictional limitation and must be strictly construed. Justice of the Peace Steve S. Sorage was not "the nearest available magistrate" and, therefore, did not have jurisdiction of this violation.

Justice of the Peace Harer died within a few months after the alleged violation, and he might have been unable to perform official duties as justice of the peace prior to his death. The legislature has provided for such cases by the Act of June 30, 1955, P. L. 242, sec. 1, which provides, inter alia, 42 PS §16:

"In any period of 30 consecutive days within any calendar year during which a justice of the peace . . . is incapable of performing any of his official duties due to illness . . . any other justice of the peace . . .

may perform in his stead any duties of the justice of the peace . . . when requested to do so by the person in lieu of whom he acts."

However, the sections and requirements of this act must be fully complied with.

We suggest that this act be called to the attention of justices of the peace who have extended illnesses, in order to avoid similar situations.

### Order

And now, May 17, 1962, the above action not having been brought before the nearest available justice of the peace, the information is quashed and the case dismissed. Costs to be paid by the County of Lycoming.